UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DR. JIN ZHAO,

                              Plaintiff,                  REPORT AND
                                                                       RECOMMENDATION

   -against-

                                                                      04 CV 210 (KAM)(RML)

STATE UNIVERSITY OF NEW YORK, *et al.*,

                              Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Susan C. Warnock, Esq. ("Warnock"), previously-retained counsel for plaintiff Jin Zhao ("plaintiff" or "Dr. Zhao"), moves to intervene in this action and to impose a charging lien on plaintiff's award from her January 10, 2011 settlement with defendants State University of New York, SUNY Downstate Medical Center, The Research Foundation of the State University of New York, and Dr. Olcay Batuman (collectively, "defendants"). On January 20, 2011, the Honorable Kiyo A. Matsomoto, United States District Judge, referred the motion to me for a Report and Recommendation. For the following reasons, I respectfully recommend that the motion be granted in part and denied in part.

## BACKGROUND AND FACTS

        The court assumes familiarity with this case and will focus on the events that led up to Warnock's dismissal as plaintiff's counsel. Briefly, plaintiff retained Warnock's firm on July 24, 2003, in conjunction with this wrongful termination lawsuit.[1] At that time, petitioner signed a retainer agreement (the "Retainer") in which she agreed to pay Warnock "1/3 of any

---

[1] The suit was filed in New York Supreme Court on November 28, 2003 and was removed to this court on January 20, 2004.

monies you might recover as a contingent fee less any monies you have disbursed to us for costs and expenses." (Retainer Agreement, dated July 24, 2003, attached as part of Ex. A to the Declaration of Susan C. Warnock, Esq., dated Feb. 16, 2011 ("Warnock Decl.").) The Retainer also provided that "[s]hould you terminate us as your attorneys and hire new counsel prior to receiving a settlement from your employer, we shall be entitled to a lien on the proceeds of such settlement commensurate with the time we have spent on your matter." (Id.) Over a seven-year period following her retention, Warnock took numerous actions on plaintiff's behalf, including drafting and filing the complaint, attending several court conferences, drafting a memorandum in opposition to defendants' motion for summary judgment, and preparing for trial.

On January 3, 2011, a week before trial was scheduled to begin, Warnock filed an *ex parte* status report in which she advised me that her continued representation of plaintiff was "an issue due to Plaintiff's refusal to yield to [her] advice and counsel on issues that are within the purview of counsel to decide." (Status Report, dated Jan. 3, 2011 ("Jan. 3 Status Report"), at 1.) Moreover, Warnock stated that she was "also concerned in that Plaintiff has expressed the belief that I am not zealously pursuing her interests and has implied that I should be liable for breach of contract as a result." (Id.) Following receipt of the letter, I held an *ex parte* conference with Warnock. At that conference, Warnock indicated that plaintiff had made "an implied threat" to discharge Warnock as her attorney. (Transcript of Status Conference, dated Jan. 3, 2011, at 3.) During the course of the conference I also scheduled an *ex parte* settlement conference that I directed Warnock and plaintiff to attend on January 5, 2011. Dr. Zhao failed to attend the conference, but sent her husband, Kai Jiang, in her place.

On January 6, 2011, four days before the scheduled trial, Warnock's associate

Weizhong "Rachel" Yu, Esq. ("Yu"), called plaintiff. (Declaration of Weizhong Yu, dated Feb. 16, 2011 ("Yu Decl."), ¶ 21.) After she informed plaintiff that it would be impossible to settle the case for the $900,000 that plaintiff desired, plaintiff stated that "she was thinking about changing her attorneys" or even "defending" herself at trial. (Id. ¶¶ 21, 22.) When Yu pressed her regarding how she wanted to proceed, plaintiff told her in Mandarin, "please release your heart, I will handle myself. I will appear to the Court on Monday and I will have an interpreter with me," and then she hung up the phone. (Id. ¶ 22.) Yu attempted unsuccessfully to call plaintiff back. (Id. ¶ 23.) When Yu advised Warnock of the discussion and her unsuccessful efforts to contact plaintiff, Warnock sent plaintiff an email in which she stated that it had come to her attention "that you intend to proceed with the trial of this action on your own." (Warnock Decl., Ex. C.) She stated that it was "imperative" that plaintiff contact Warnock's office because Warnock would have to contact the court if plaintiff intended to terminate the attorney-client relationship. (Id.) Warnock sent a follow-up email at 4:36 p.m., in which she stated that "[i]nasmuch as time is of the essence with respect to preparation for trial, if I do not hear from you by 5:00 PM today, I will have no alternative but to notify Judge Matusmoto and opposing counsel that you have discharged my firm as your counsel . . . ." (Id.)

       Yu subsequently attempted to call Dr. Zhao shortly after 5:00 p.m. on January 6 and again at around 9:30 a.m. on January 7; no one answered the phone on either occasion. (Yu Decl. ¶ 25; see also Warnock Decl., Ex. B.) At 11:40 a.m. on January 7, 2011, plaintiff faxed Warnock a letter in which she stated that "[t]his is to confirm that I have informed you verbally that you and your law office have been discharged as my attorney . . . ." (Warnock Decl., Ex. D.) She also requested that Warnock "immediately inform all parties and the court that you are no

longer my attorney . . . ." (Id.) That day, plaintiff retained Ming Hai as her new attorney. (See Declaration of Ming Hai, Esq., dated Feb. 17, 2011, at 1.) Ming Hai telephoned Warnock that afternoon and informed her that plaintiff was in his office and wanted to retain her as counsel but he did not confirm that he had been officially retained. (Warnock Decl. ¶ 22.)

Because she had not yet been relieved as counsel, Warnock spent the weekend preparing for trial, and she appeared for trial at 9:00 a.m. on January 10, 2011.[2] (Warnock Decl. ¶¶ 24–25.) Prior to jury selection, Judge Matsumoto relieved Warnock as counsel and substituted Ming Hai, Esq., and Suhail Amar, Esq., as counsel for plaintiff. (Minute Entry, dated Jan. 10. 2011.) That afternoon, plaintiff settled her claim with defendants for $70,000. (See Trial Transcript, dated Jan. 10, 2011, at 25–27.)

Warnock now moves to intervene in this action and to impose a charging lien on the entirety of the proceeds of plaintiff's settlement with defendants. Plaintiff does not dispute the facts as described in Warnock's submission but, as described below, differs as to the conclusions the court should draw from the facts.

## DISCUSSION

As an initial matter, it is proper for this Court to exercise jurisdiction over Warnock's claim for attorneys' fees. See, e.g., Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir. 1999) ("Federal courts may exercise supplemental jurisdiction to hear fee

---

[2] Following receipt of the fax from plaintiff, Warnock drafted and faxed a letter to Judge Matsumoto on January 7, 2011, in which she informed her of the fax she had received from plaintiff. (Letter, dated Jan. 7, 2011 (Dkt. Entry #121); see also Warnock Decl. ¶ 21.) Judge Matsumoto attempted to hold a telephone conference that afternoon, but Dr. Zhao did not appear as instructed. (See Warnock Decl. ¶ 23.) As a result, Judge Matsumoto ordered Warnock to appear before the court on the morning of January 10, 2011. (Order, dated Jan. 7, 2011.)

disputes between litigants and their attorneys when the dispute relates to the main action." (internal citations and punctuation omitted)). Supplemental jurisdiction is particularly appropriate in a case such as this, where the court is familiar with the underlying facts and where resolution of this fee dispute necessarily affects distribution of the settlement award.

      A. <u>Entitlement to a Charging Lien</u>

"The Second Circuit has made clear that Section 475 [of the New York Judiciary Law] governs attorneys' charging liens in federal courts sitting in New York, and such liens are 'enforceable in federal courts in accordance with its interpretation by New York courts.'" <u>Stair v. Calhoun</u>, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (quoting <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 449 (2d Cir. 1998)). Section 475 provides in pertinent part:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action . . ., which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

"A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action." <u>Antonmarchi v. Consol. Edison Co. of New York</u>, 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (quoting <u>Chadbourne & Parke, LLP v. AB Recur Finans</u>, 794 N.Y.S.2d 349, 350 (1st Dep't 2005)). "An attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings."

Id. at 241 (citations omitted). "However, under New York law, an attorney who withdraws without good cause or is discharged with good cause is not entitled to a charging lien." Hill v. Baxter Healthcare Corp., No. 98 CV 4314, 2005 WL 465429, at *2 (E.D.N.Y. Feb. 7, 2005); see also Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997) ("It is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." (citations omitted)).

In this case, Warnock can invoke N.Y. Judiciary Law § 475 because plaintiff settled with defendants for $70,000. See Melnick v. Press, No. 06-CV-6686, 2009 WL 2824586, at *2 (E.D.N.Y. Aug. 28, 2009) ("In order to establish a lien under Section 475, 'there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney.'" (quoting Rosewood Apartments Corp. v. Perpignano, No. 99 Civ. 4226, 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005))). However, plaintiff argues that a lien is unwarranted because Warnock "forfeited all claims to monetary payment" when she "terminated her own involvement in this case first." (Letter from Jin Zhao to Hon. Robert M. Levy, dated Feb. 17, 2011 ("Pl.'s Feb. 17 Letter"), at 1; see also Transcript of Feb. 2, 2011 Conference at 9, 20.) For the proposition that Warnock withdrew as her attorney, she relies on the second email Warnock sent her on January 6, 2011. In that email, Warnock stated that if she did not hear from plaintiff by 5:00 p.m. on that day, she would have to inform the court that plaintiff had discharged her. However, this letter clearly indicates that Warnock believed plaintiff to be discharging her (and not the other way around), and it is supported by other evidence that plaintiff fired Warnock. For instance, Warnock repeatedly—and as early as January 3, 2011—expressed to the court her concerns that plaintiff was considering discharging

her, and, prior to Warnock's drafting of the second January 6 email, plaintiff informed Yu that she would "handle [the case] myself." (Yu Decl. ¶ 22.) Moreover, plaintiff sent Warnock an email on January 7, 2011 in which she stated that "this is to confirm *what I have informed you verbally* that you and your law office have been discharged as my attorney." (Warnock Decl., Ex. E. (emphasis added).)[3]

Because the record clearly indicates that plaintiff discharged Warnock, the relevant question with respect to whether Warnock is entitled to a lien is whether plaintiff discharged her "for cause." However, in response to Warnock's motion, plaintiff has neither demonstrated that she discharged Warnock for cause, nor shown "impropriety or misconduct on the part of the attorney," Simon v. Unum Group, No. 07 CV 11426, 2010 WL 2541145, at *1 (S.D.N.Y. June 23, 2010). In her opposition, Dr. Zhao alleges that her attorney failed to subpoena two witnesses for trial and to seek an adjournment of the trial for the purpose of obtaining their testimony. (Letter from Jin Zhao to Hon. Robert M. Levy, dated Feb. 9, 2011 ("Pl.'s Feb. 9 Letter"), at 1.) However, Warnock affirmed, and Dr. Zhao did not dispute, that one witness could not be located and the second warned Warnock that his testimony would be unfavorable. Moreover, the record demonstrates that Warnock performed "reasonable and necessary services" for plaintiff, Kantor, Davidoff, Wolfe, Mandelker & Kass, P.C. v. Codata Corp., 172 F.3d 38 (2d Cir. 1999) (finding that a law firm was not discharged for cause), and plaintiff does not contend that she "violated any legally or professionally imposed duty in regard to" plaintiff, Allstate Ins. Co. v. Nandi, 258 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (finding that

---

[3] Warnock asked Dr. Zhao to come to her office on January 7, 2011 at 10:00 a.m. to prepare for trial. Dr. Zhao failed to appear. Instead, she sent Warnock a termination letter and retained another attorney that same day.

there was no showing that attorneys had violated such a duty and that, therefore, they had not been discharged "for cause"). Therefore, I recommend that Warnock's request for a charging lien pursuant to N.Y. Judiciary Law § 475 be granted.

        2. Amount of the Charging Lien

As for the amount at which the charging lien should be fixed, under N.Y. Judiciary Law § 475, the lien may be determined "on a quantum meruit basis, ascertaining the reasonable value of the legal services rendered up to the date of" counsel's withdrawal or discharge. Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998). "If the amount of the charging lien has been fixed by agreement, . . . execution is appropriate on the judgment for the amount agreed to by the parties." Itar-Tass Russian News Agency, 140 F.3d at 453. In this case, the Retainer fixes the charging lien for the same amount it would be without such an agreement—"commensurate with the time [Warnock and Yu] have spent on the matter." (Warnock Decl., Ex. A at 2.) Thus, the charging lien should be for the reasonable value of the services that Warnock and her associates provided.

Warnock has stated that her attorney's fees are $84,766.78, an amount in excess of the settlement proceeds. (Warnock Decl. ¶ 4.) Warnock derived this amount by adding the total fees for services her firm rendered ($84,110.00)[4] to the disbursements that her firm made ($2,156.78), and then subtracting the $1,500.00 plaintiff advanced towards disbursements. (Id. ¶

---

[4] The $84,110.00 sum is based on the hourly billing rates of $200.00 for attorneys, $90.00 for summer associates, and $75.00 for paralegals. (Warnock Decl. ¶ 2.) Although plaintiff has not contested these billing rates, it is worth noting that they are well within the ranges that courts within this district have found to be appropriate. See Penberg v. HealthBridge Mgmt., No. 08 CV 1534, 2011 WL 1100103, at *6 (E.D.N.Y. Mar. 22, 2011) (summarizing the range of hourly rates that courts in this district have found to be reasonable).

6.) Warnock has also submitted an affidavit and contemporaneous billing records. (See id., Ex. A.) Plaintiff argues that the amount that Warnock seeks is too high and urges that if a lien is granted, it should be set at $11,879.37.[5] (Pl.'s Feb. 9 Letter at 3; see also Pl.'s Feb. 17 Letter at 1 ("She has no right to ask for such a ridiculous amount of money.").)

"The hours actually expended and the rates actually charged are, of course, not dispositive of the amount at which the charging lien should be fixed." Stair, 722 F. Supp. 2d at 270. "[T]he determination of the reasonable value of the attorney's services 'is a matter within the sound discretion of the trial court.'" Sequa Corp., 156 F.3d at 149 (quoting Chernofsky & DeNoyelles v. Waldman, 622 N.Y.S.2d 560, 560 (2d Dep't 1995)). "A charging lien . . . is equitable in nature . . . and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" Pilitz v. Inc. Vill. of Freeport, No. CV 07-4078, 2011 WL 315979, at *2 (E.D.N.Y. Feb. 2, 2011) (citations omitted). In determining the amount of a charging lien, the court may consider the following factors: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained." Sequa Corp., 156 F.3d at 148 (citations omitted).

After a careful review of Warnock's submissions, I find that, for the purposes of the lien, her fees should be reduced to $56,131.25 and her costs should be reduced to $627.53. First, although Warnock's billing practices are generally commendable, occasionally her billing entries appear excessive or overly vague. For example, on March 6, 2006, she billed an hour's

---

[5] Plaintiff derived this sum by subtracting the $20,000 she paid Ming Hai, dividing that amount by three (as per the original contingency fee agreement), and then subtracting the expenses that she paid directly. (Pl.'s Feb. 9 Letter at 3.)

worth of time for a clerical task—simply converting documents to PDF format and emailing and mailing the documents to defense counsel.[6]  (See Warnock Decl., Ex. A.)  In addition, Warnock's repeated use of block-billing makes it impossible to assess the reasonableness of numerous entries.  A thirty percent reduction in fees is appropriate to account for these excessive and vague entries.  See In re "Agent Orange" Prods. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (explaining that "the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983))); see also Stair, 722 F. Supp. 2d at 270 (imposing a ten percent reduction to billed hours because of the repeated use of block-billing); Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (deducting fifteen percent of the number of hours claimed "[b]ecause the time records here contain some vague entries and block entries" (internal citation and quotation marks omitted)).

Finally, because section 475 explicitly states that an attorney has a lien against her client's cause of action *upon commencement* of the action, the "lien should be fixed to account for services rendered beginning at the time of the action's commencement and not at the time that the firm was retained."  Stair, 722 F. Supp. 2d at 270.  As a result, Warnock is not entitled to a lien for the $3,922.50 in costs and $23.25 in fees for services rendered before November 28, 2003, the date the case was filed.  Otherwise, I find Warnock's costs reasonable, and I recommend that they be awarded without reduction.

---

[6] Attorneys engaged in clerical tasks "should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all."  Rozell v. Ross-Hoist, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008).

In sum, I respectfully recommend that the lien be awarded in the amount of $56,758.78, broken down into the following fees and costs:

Fees: .70 (84,110.00 - 3,922.50)= $56,131.25

Costs: (2,156.78 - 1,500.00) - 23.25= $627.53

### Conclusion

For the reasons stated above, I respectfully recommend that Warnock's motion be granted in part and that she be awarded a $56,758.78 lien on plaintiff's settlement award. In addition, I recommend that interest on the $35,000 settlement contribution of defendants State University of New York and Dr. Olcay Batuman begin to accrue 100 days from the date of Judge Matsumoto's final decision on this motion. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Matsumoto and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
April 19, 2011