UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

DR. JIN ZHAO,

              Plaintiffs,

  -against-

STATE UNIVERSITY OF NEW YORK ET AL.,

             Defendant.

----------------------------------------X

**MEMORANDUM AND ORDER**

04-CV-0210 (KAM)(RML)

**MATSUMOTO, United States District Judge:**

        Susan Warnock, Esq. ("Warnock"), previously-retained counsel for plaintiff Dr. Jin Zhao ("plaintiff"), seeks a charging lien on plaintiff's award from her January 10, 2011 settlement with defendants State University of New York, SUNY Downstate Medical Center, The Research Foundation of the State University of New York, and Dr. Olcay Batuman (collectively, "defendants"). (*See* ECF No. 124, Letter Motion for Attorney Fees, dated 1/19/2011; ECF No. 128, Motion for Attorney Fees, dated 2/16/2011.)

        On April 19, 2011, Magistrate Judge Robert M. Levy issued a Report and Recommendation ("R&R") recommending that Warnock's motion be granted in part and that she be awarded a $56,758.78 lien on plaintiff's settlement award. (ECF No. 135, Report and Recommendation ("R&R") at 11.)[1] On May 2, 2011,

---

[1] The R&R also recommends that interest on the $35,000 settlement contribution of defendants State University of New York and Dr. Olcay Batuman begin to accrue 100 days from the date of the instant Order. (R&R at 11.)

plaintiff filed timely objections to the R&R. (ECF No. 136, Appeal/Objection to Magistrate Judge Robert M. Levy's Report and Recommendation ("Zhao Obj.").) On May 3, 2011, Warnock filed a declaration supporting Judge Levy's Report and Recommendation and responding to plaintiff's objections. (ECF No. 137, Declaration In Support of Report & Recommendations ("Warnock Resp.").) On May 24, 2011, plaintiff submitted an unauthorized response further objecting to the R&R.[2] (*See* ECF No. 138, Affidavit/Affirmation in Reply to Attorney Susan Warnock's Declaration of 5/3/11 ("Zhao Sur-Reply").) After a *de novo* review of the record in light of plaintiff's objections pursuant to 28 U.S.C. § 636(b)(1), the court incorporates the R&R by reference and adopts it in its entirety.

**STANDARD OF REVIEW**

**I. Review of Report and Recommendation**

To the extent that a party makes specific objections to a magistrate judge's findings, the court must make a *de novo* determination. *Arista Records LLC v. Doe*, 604 F.3d 110, 116 (2d Cir. 2010); Fed. R. Civ. P. 72(b). In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made

---

[2] Because plaintiff's May 24, 2011 submission was unauthorized and tardy, the court need not consider it. However, in the interest of addressing plaintiff's objections to the fullest extent possible, the court has considered any additional issues raised by plaintiff's tardy submission, as noted herein.

2

by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  *See also* Fed. R. Civ. P. 72(b)(3).  "In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  *Illis v. Artus*, No. 06-CV-3077, 2009 U.S. Dist. LEXIS 77596, at *3 (E.D.N.Y. Aug. 27, 2009) (quoting *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851, 2006 U.S. Dist. LEXIS 61872, *2 (E.D.N.Y. Aug. 30, 2006)).

## BACKGROUND

### I. The Underlying Dispute

The relevant facts in this matter are set forth in detail in Judge Levy's thorough R&R.  (*See* R&R at 1-4.)  Briefly, the pertinent facts are as follows.  On July 24, 2003, plaintiff retained Warnock to represent her in a wrongful termination suit against her former employer.  (*See* ECF 128-3 at 1,[3] Retainer Agreement dated 7/24/2003 ("Retainer").)  The parties executed a retainer agreement in which plaintiff agreed to pay Warnock and Weizhong "Rachel" Yu, Esq. ("Yu") "1/3 of any monies which [plaintiff] might recover as a contingent fee less any monies [plaintiff] ha[s] disbursed to [Warnock and Yu] for costs and expenses."  (*Id.* at 1.)  The retainer agreement also provided that "[s]hould [plaintiff] terminate [Warnock and Yu] as [her]

3

attorneys and hire new counsel prior to receiving a settlement from [plaintiff's] employer, [Warnock and Yu] shall be entitled to a lien on the proceeds of such settlement commensurate with the time [they] have spent on [plaintiff's] matter." (*Id.* at 2.) Between July 2003 and January 2011, Warnock took numerous actions on plaintiff's behalf, including drafting and filing the complaint, attending several court conferences, drafting a memorandum in opposition to defendants' motion for summary judgment, and preparing for trial.

On January 3, 2011, a week before trial was scheduled to begin, Warnock advised the court in an *ex parte* status report and subsequent *ex parte* conference that she believed her continued representation of plaintiff was at risk. (*See* ECF No. 115, Status Report Request for *Ex Parte* Conference; ECF No. 130, Sealed Transcript of Proceedings held on January 3, 2011 before Judge Levy at 3.)

On January 6, 2011, four days before the scheduled trial, plaintiff informed Warnock's associate, Yu, by telephone that plaintiff "was thinking about changing her attorneys" or even "defending" herself at trial. (ECF No. 128-2, Declaration of Weizhong Yu dated 2/16/2011 ("Yu Decl.") ¶¶ 21, 22. *See also* ECF No. 136, Zhao Obj. ¶ 3-1c.) When Yu pressed plaintiff regarding how she wanted to proceed, plaintiff told her in

---
[3] The page numbers cited herein are those assigned by the court's electronic

4

Mandarin, "please release your heart, I will handle myself.  I
will appear to the Court on Monday and I will have an interpreter
with me."  (ECF No. 128-2, Yu Decl. ¶ 22.)  At 1:09 p.m., Warnock
sent plaintiff an e-mail stating that it had come to her
attention "that you intend to proceed with the trial of this
action on your own" and asking plaintiff to reply by 3:00 p.m. to
inform Warnock whether she wished to terminate her as her
counsel.  (ECF No. 128-4 at 4, E-mail from Susan Warnock to Zhao
Xiaopin dated 1/6/2011 at 1:09 p.m. ("1:09 p.m. Warnock E-
mail").)  At 4:36 p.m., Warnock sent a follow-up e-mail stating,
"if I do not hear from you by 5:00 PM today, I will have no
alternative but to notify Judge Matsumoto and opposing counsel
that you have discharged my firm as your counsel . . . ."  (ECF
No. 128-4 at 5, E-mail from Susan Warnock to Zhao Xiaopin dated
1/6/2011 at 4:36 p.m. ("4:36 p.m. Warnock E-mail").)  Yu
attempted to call plaintiff shortly after 5:00 p.m. on January 6
and again at around 9:30 a.m. on January 7; no one answered the
phone on either occasion.  (ECF No. 128-2, Yu Decl. ¶ 25.  *See
also* ECF No. 128-4 at 3, Telephone Records for Weizhong Yu.)

      At 11:40 a.m. on January 7, 2011, plaintiff faxed
Warnock a letter stating, "[t]his is to confirm that I have
informed you verbally that you and your law office have been
discharged as my attorney . . . ."  (ECF. No. 128-4 at 6, Fax

---

case filing system.

from Jin Zhao to Susan Warnock dated 1/7/2011 at 11:40 a.m. ("11:40 a.m. Zhao Fax").) She also requested that Warnock "immediately inform all parties and the court that you are no longer my attorney . . . ." (*Id.*) That day, plaintiff retained Ming Hai, Esq. as her new attorney. (ECF No. 129, Affidavit/Declaration of Ming Hai in Opposition, filed 2/17/2011, at 1.) Nevertheless, because Warnock had not yet been relieved as counsel, she spent the weekend preparing for trial, and she appeared for trial at 9:00 a.m. on January 10, 2011. (ECF No. 128, Declaration of Susan Warnock, dated 2/16/2011 ("Warnock Decl.") ¶¶ 24-25.) Prior to jury selection, the court relieved Warnock as counsel and substituted Ming Hai, Esq. and Suhail Amar, Esq. as counsel for plaintiff. (Minute Entry dated 1/10/2011.) That afternoon, plaintiff settled her claim with defendants for $70,000. (*See* ECF No. 141-2, Trial Transcript, dated 1/10/2011, at 13-14.)

Warnock now seeks to impose a charging lien on the proceeds of plaintiff's settlement with defendants pursuant to New York Judiciary Law Section 475 ("Section 475"), asserting that she is entitled to $84,110.00 in fees for the time she expended on plaintiff's case, as well as $650.78 in disbursements, for a total of $84,766.78. (ECF No. 128, Warnock Decl. ¶¶ 4-7. *See also* ECF No. 124, Letter Motion for Attorney Fees.)

**II. The Report and Recommendation**

As Judge Levy noted in the R&R, "[t]he Second Circuit has made clear that Section 475 [of the New York Judiciary Law] governs attorneys' charging liens in federal courts sitting in New York, and such liens are enforceable in federal courts in accordance with its interpretation by New York courts."[4] (R&R at 5 (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (internal quotation marks and citation omitted)).) Under Section 475, an attorney is entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney rendered legal services, provided that the attorney has not withdrawn without "good cause" and has not been terminated "for cause." *Melnick v. Press*, No. 06-CV-6686, 2009 U.S. Dist. LEXIS 77609, at *9 (E.D.N.Y. Aug. 28, 2009) ("[A]ttorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'").

---

[4] Section 475 provides, in pertinent part:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his client's cause of action . . . which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475.

7

Therefore, the first question in determining whether a charging lien is appropriate here is whether Warnock was terminated or whether she withdrew. In the R&R, Judge Levy carefully reviewed the record and concluded that the sequence of events leading up to the replacement of Warnock as plaintiff's counsel "clearly indicates that plaintiff discharged Warnock." (R&R at 7.) The R&R notes that Warnock had "repeatedly — and as early as January 3, 2011 — expressed to the court her concerns that plaintiff was considering discharging her, and, prior to Warnock's drafting of the second January 6 email, plaintiff informed Yu that she would 'handle [the case] myself.'" (*Id.* at 6-7.)[5] The court, upon *de novo* review of the record, also finds that plaintiff discharged Warnock as counsel.

Next, Judge Levy considered whether Warnock was dismissed "for cause." (*Id.* at 7.) The R&R noted plaintiff's complaint that Warnock failed to subpoena two witnesses for trial and did not seek to adjourn the trial at plaintiff's request. (*Id.*) It also noted that one of those witnesses could not be located and the second witness sought to be presented by plaintiff had warned Warnock that his testimony at trial would be unfavorable to plaintiff's case. (*Id.*) Judge Levy therefore

---

[5] The R&R further notes that even after Warnock received plaintiff's e-mail notifying her that plaintiff had retained new counsel, Warnock "spent the weekend preparing for trial," (R&R at 4), demonstrating that she had not withdrawn and did not intend to do so without the court's approval.

8

concluded that "plaintiff has neither demonstrated that she discharged Warnock for cause, nor shown 'impropriety or misconduct on the part of the attorney.'" (*Id.* (quoting *Simon v. Unum Grp.*, No. 07-CV-11426, 2010 U.S. Dist. LEXIS 62661, at *3 (S.D.N.Y. June 23, 2010)).) Accordingly, he found that Warnock was entitled to a charging lien pursuant to Section 475. (*Id.* at 8.) Again, the court agrees, upon *de novo* review, that plaintiff did not demonstrate good cause for discharging Warnock or that Warnock had engaged in impropriety or misconduct.

Judge Levy next turned to the amount at which the charging lien should be fixed. (*Id.* at 8.) The R&R first noted that the parties' retainer agreement "fixes the charging lien for the same amount it would be without such an agreement – 'commensurate with the time [Warnock and Yu] have spent on the matter.'" (*Id.* (quoting ECF No. 128-3 at 1, Retainer at 2).) The R&R next considered Warnock's contemporaneous billing records to determine the reasonable value of Warnock's services. (*Id.* at 8-9. *See also* ECF No. 128-3 at 3, Billing Records.) After a careful review of Warnock's submissions, Judge Levy recommended that Warnock's fees be reduced by thirty percent to account for various vague and excessive entries in her billing records. (*Id.* at 9-10.) In addition, Judge Levy found that the charging lien should relate only to services rendered after the action was commenced on November 28, 2003. (*Id.* at 10.) In conclusion,

9

Judge Levy recommended that Warnock be granted a lien against plaintiff's settlement for $56,131.25 in fees and $627.53 in costs. (*Id.* at 9-11.)

**III. Plaintiff's Objections[6]**

Although plaintiff has filed two lengthy submissions in opposition to the R&R, few of her arguments directly address the R&R's reasoning or findings. Instead, plaintiff summarily alleges that the R&R is "arbitrary and unreasonable." (ECF No. 136, Zhao Obj. ¶ 4-6.) Plaintiff objects to the R&R on the ground that "Judge Levy's discussion was based on not fully [sic] background and not fully [sic] facts showed in his Report." (*Id.* ¶ 3-4a.) She further states that "Judge Levy's Report was based on the incomplete[] facts and ignore some l[a]w that should be referred here clearly" and that "[t]he facts and the relevant Laws that ignored in the Report are all do not support Susan and Judge Levy's Report." (*Id.* ¶¶ 4-2, 4-3.) Rather than providing additional facts, however, plaintiff's objections merely reiterate the three general arguments she raised in her initial opposition, all of which Judge Levy carefully considered and

---

[6] In a letter to the court dated February 9, 2011, plaintiff also requested the court to correct the transcript of the court proceedings on January 10, 2011, which reflects that plaintiff uttered numerous obscenities. (*See* ECF No. 141, Letter from Jin Zhao dated 2/9/2011. *See also* ECF No. 136, Zhao Obj. ¶ 6.) The court defers to the court reporter's expertise in transcribing the proceedings. Further, the requested corrections would have no effect on the outcome of the pending dispute. *See Wynn v. AC Rochester Gen. Motors Corp.*, 303 F. App'x 26, 27 (2d Cir. 2008). Accordingly, plaintiff's request to correct the transcript of the proceedings on January 10, 2011 is denied.

rejected.

Plaintiff's first objection is that Warnock is not entitled to attorney's fees because she did not terminate Warnock. (*See id.* ¶¶ 1-3, 1-4, 3-1; ECF No. 138, Zhao Sur-Reply ¶¶ 1g, 1h; ECF No. 134, Letter dated 2/9/2011 from Jin Zhao to Judge Levy ("2/9/11 Zhao Opp.") at 2-3; ECF No. 133, Letter dated 2/17/2011 from Jin Zhao to Judge Levy ("2/17/11 Zhao Opp.") ¶¶ 2, 4.) Instead, plaintiff insists that Warnock withdrew as her attorney by e-mail on January 6, 2011. (*See* ECF No. 136, Zhao Obj. ¶¶ 1-4, 3-1; ECF No. 134, 2/9/11 Zhao Opp. at 3.) Plaintiff points to Warnock's 1:09 p.m. e-mail, in which Warnock noted her belief that plaintiff "intend[ed] to" terminate her as counsel, and not that she had already done so. (ECF No. 136, Zhao Obj. ¶¶ 3-1b, 3-1c. *See also* ECF No. 128-4 at 4, 1:09 p.m. Warnock E-mail.) Similarly, plaintiff emphasizes that Yu's Declaration noted that plaintiff was "thinking" of terminating Warnock, and not that she had already decided to do so. (ECF No. 136, Zhao Obj. ¶ 3-1c.) Moreover, plaintiff argues that Warnock effectively withdrew as her attorney by sending her e-mails when Warnock knew plaintiff was not at home and giving plaintiff insufficient time to respond. (*Id.* ¶¶ 1-3d, 3-2a, 3-5; ECF No. 138, Zhao Sur-Reply ¶ 6; ECF No. 134, 2/9/11 Zhao Opp. at 2.) The court notes, however, that by letter dated and sent by facsimile on January 7, 2011 to Warnock, plaintiff confirmed that

she had earlier verbally informed Ms. Warnock that "you and your law office have been discharged as my attorney . . . ." (ECF No. 128-4 at 6, 11:40 a.m. Zhao Fax.)

Plaintiff further objects to the R&R on the ground that Warnock "did not do her work well," thereby giving plaintiff good cause to terminate her. (ECF No. 136, Zhao Obj. ¶ 1-2.) Plaintiff alleges that Warnock (1) withdrew certain claims from the lawsuit against plaintiff's wishes;[7] (2) failed to challenge several reassignments of the case to different judges;[8] (3) pressured plaintiff to accept inadequate settlement offers;[9] (4) warned plaintiff that she was likely to lose her case due to discrimination in the judicial system;[10] (5) failed to follow up

---

[7] Warnock withdrew a retaliation claim and breach of contract and New York State Human Rights Law claims against defendant SUNY. (ECF No. 136, Zhao Obj. ¶ 1-2a.)

[8] Plaintiff's action was originally filed in New York Supreme Court. In January 2004, defendants removed the case to federal court and it was assigned to U.S. District Judge Nina Gershon. (*See* ECF No. 1, Notice of Removal dated 1/20/2004.) In February 2006, the case was reassigned from Judge Gershon to U.S. District Judge Joseph Bianco. (*See* Minute Entry dated 2/10/2006.) In December 2008, the case was reassigned from Judge Bianco to U.S. District Judge Kiyo Matsumoto. (*See* Minute Entry dated 12/18/2008.) Plaintiff argues that as a result of these reassignments, she "lost [a] chance to make appeals." (ECF No. 136, Zhao Obj. ¶ 1-2b.)

[9] Plaintiff claims that Warnock "force[d] me to receive the settlement conditions from even $10k with the excuse of there exist[s] discrimination in the US c[o]urt system . . . so I will lose the case." (ECF No. 136, Zhao Obj. ¶ 1-2c; ECF No. 138, Zhao Sur-Reply ¶ 1c. *See also* ECF No. 133, 2/17/11 Zhao Opp. ¶ 5.)

[10] Plaintiff argues that prior to the December 23, 2010 settlement conference, Warnock told her that "due to the Japanese Judge I will lose my case," causing Zhao to "lose faith in the US judicial system." (ECF No. 136, Zhao Obj. ¶¶ 1-2c, 1-2e, 3-4b; ECF No. 138, Zhao Sur-Reply ¶ 1c. *See also* ECF No. 133, 2/17/11 Zhao Opp. ¶¶ 5-7.)

on another incident of racism at SUNY;[11] (6) refused to subpoena certain witnesses for trial;[12] (7) failed to seek an adjournment of the trial;[13] and (8) asked a witness to sign a declaration containing a legal conclusion that made the witness uncomfortable.[14]

Finally, plaintiff reiterates her request that Warnock's fees, if any, should be limited to $11,879.37, which represents one third of plaintiff's total settlement award, after the fees she paid her new attorney and the fees she already paid Warnock are subtracted from her recovery. (ECF No. 136, Zhao Obj. ¶¶ 2-3, 2-4, 2-5, 2-6, 2-7, 4-1c, 5; ECF No. 138, Zhao Sur-Reply ¶ 10. *See also* ECF No. 134, 2/9/11 Zhao Opp. at 3-4; ECF No. 133, 2/17/11 Zhao Opp. ¶¶ 2, 9.) She asserts that the R&R violates public policy and that "Judge Levy did not discuss the issue that whether a client shall pay more to [a] former attorney than the retainer agreement provide[s] merely because [the]

---

[11] Plaintiff notes that Warnock did not follow up on the case of a Chinese man who had committed suicide, which Zhao insisted would show bad working conditions at SUNY. (ECF No. 136, Zhao Obj. ¶ 1-2d.)

[12] Warnock did not subpoena two witnesses to testify during plaintiff's trial. (ECF No. 136, Zhao Obj. ¶ 3-4c; ECF No. 138, Zhao Sur-Reply ¶ 3; ECF No. 134, 2/9/11 Zhao Opp. at 1.)

[13] Warnock did not seek an adjournment of the trial, as Zhao requested. (ECF No. 136, Zhao Obj. ¶ 1-2f; ECF No. 134, 2/9/11 Zhao Opp. at 1.)

[14] Warnock asked a witness to sign a declaration that stated, "at times, I felt that Dr. Batuman was behaving in a discriminatory manner toward Dr. Zhao because she was very condescending." (ECF No. 136, Zhao Obj. ¶¶ 1-2g, 1-2h; ECF No. 138, Zhao Sur-Reply ¶ 3. *See also* ECF No. 136 at 18, Unsigned Declaration of Sunming Luo.)

13

client changes lawyer[s]." (ECF No. 136, Zhao Obj. ¶¶ 4-1a, 4-5. *See also* ECF No. 133, 2/17/11 Zhao Opp. at 1.)

Additionally, plaintiff demands that Warnock return her files. (*See* ECF No. 134, 2/9/11 Zhao Opp. at 4; ECF No. 136, Zhao Obj. ¶ 6-2.)

**IV. Warnock's Response**

Warnock responds to plaintiff's objections, arguing that "[p]laintiff has failed to allege any factual or legal basis for her Objection to the Report and Recommendation of Magistrate Judge Levy." (ECF No. 137, Warnock Resp. ¶ 3.) She notes that she withdrew a retaliation claim because it was not supported by the evidence. (*Id.* ¶ 3 n.1.) She further asserts that she never — and could not have — forced plaintiff to accept any settlement offers because due to plaintiff's refusal to engage in settlement discussions, "there were no settlement negotiations with the Defendants during the course of this litigation." (*Id.* ¶¶ 5-7.) Warnock affirmatively denies threatening or coercing plaintiff or warning her about discrimination in the judicial system. (*Id.* ¶¶ 9-12.) Finally, Warnock acknowledges that insofar as the time records she submitted to the court were insufficiently detailed, "the Court took this into consideration and recommended a lower amount in accordance with the law." (*Id.* ¶ 16.)

## **DISCUSSION**

In light of plaintiff's objections, the court has

undertaken a *de novo* review of the full record, including the applicable law, the underlying record, the parties' submissions on the instant motion, the R&R, plaintiff's objections to the R&R, and Warnock's submission in support of the R&R. *See* 28 U.S.C. § 636(b)(1)(C).[15]

The court finds that plaintiff's objections to the R&R merely repeat the arguments she submitted to Judge Levy, who thoroughly reviewed, considered, and rejected them for the sound reasons provided in the R&R. Further, to the extent that plaintiff's objections raise new arguments that could have been raised before, the court need not consider them. *See Gutman v. Klein*, No. 03-CV-1570, 2010 U.S. Dist. LEXIS 124707, at *16 (E.D.N.Y. Nov. 24, 2010) ("Filing objections to a report and recommendation is not the tool for mopping up any inadvertent omissions."); *Scientific Components Corp.*, 2006 U.S. Dist. LEXIS 61872, at *6-7.

Moreover, plaintiff's arguments are meritless. It is clear from the record that plaintiff dismissed Warnock, and not the other way around. In addition, plaintiff's allegations of Warnock's misbehavior are unsupported and lack substance. The

---

[15] Although plaintiff's new attorney, Ming Hai, Esq., continues to represent her and has adopted and supported her submissions (*see* ECF No. 140, Notice by Ming Hai, Esq. dated 5/25/2011), plaintiff's opposition and objections to Warnock's motion appear to have been drafted without the assistance of counsel. Therefore, the court has afforded her objections the leniency appropriate for a *pro se* plaintiff. *See Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 335 (S.D.N.Y. 2010).

15

retainer agreement that the parties entered into clearly prescribed the amount of fees to which Warnock would be entitled in the event that plaintiff discharged her, and Warnock is entitled to compensation in accordance with the terms of the retainer agreement and commensurate with her work in plaintiff's case. Finally, under common law, Warnock is entitled to a retaining lien on plaintiff's files as security for the payment of her fees. *See Saafan v. Mem'l Sloan Kettering Cancer Ctr.*, No. 07-CV-2605, 2008 U.S. Dist. LEXIS 17751, at *6-7 (S.D.N.Y. Feb. 25, 2008); *Casper v. Lew Lieberbaum & Co., Inc.*, No. 97-CV-3016, 1999 U.S. Dist. LEXIS 7779, at *16 (S.D.N.Y. May 26, 1999).

Accordingly, after *de novo* review and upon careful consideration of plaintiff's objections, the objections are overruled. This court, fully concurring with Judge Levy in all material respects, hereby adopts, in its entirety, the findings and rationale articulated in the detailed, thorough and well-reasoned R&R, which embodies a correctly grounded analysis of the factual record and legal authorities. Specifically, the court agrees with and fully adopts Judge Levy's conclusion that, pursuant to New York Judiciary Law Section 475, Warnock is entitled to a charging lien on plaintiff's settlement award in the amount of $56,758.78.

## **CONCLUSION**

For the reasons set forth above, Magistrate Judge

Levy's well-reasoned and thorough Report and Recommendation is incorporated by reference and adopted in its entirety as the opinion of the court, and plaintiff's objections are overruled. Accordingly, Warnock is entitled to a charging lien in the amount of $56,131.25 plus costs of $627.53, for a total of $56,758.78 against the settlement proceeds in this action. Interest will not begin to accrue on any unpaid amounts under the settlement agreement until 100 days after the date of this Order. Plaintiff's counsel of record, Ming Hai, Esq., shall serve a copy of this Memorandum and Order on plaintiff and file a declaration of service on the docket no later than August 16, 2011.

**SO ORDERED.**

Dated:   Brooklyn, New York
         August 15, 2011

_____/s/_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York